**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guy George Gines, | No. CV-19-04479-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Guy George Gines's Application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 21). The Court has reviewed the briefs and the Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 18–30).

**I.    BACKGROUND**

Plaintiff filed his Application on April 6, 2015 for a period of disability beginning on November 3, 2014. (R. at 18.) Plaintiff's claim was denied initially on August 7, 2015, and upon reconsideration on December 4, 2015. (R. at 18.) Plaintiff then testified at a hearing held before the ALJ on November 6, 2017. (R. at 18.) On March 29, 2018, the ALJ denied Plaintiff's Application, which became the final decision on January 23, 2019 when the Appeals Council denied Plaintiff's request for review. (R. at 4–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of obesity, lumbar degenerative disc disease with stenosis, status post fusion, cervical degenerative disc disease, and myofascial pain disorder. (R. at 21.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded Plaintiff is not disabled. (R. at 24.) She determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.) The ALJ found Plaintiff has the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except the claimant can only occasionally kneel, crouch, stoop, balance, and climb ramps or stairs." (R. at 24.) Plaintiff can "never crawl or climb ladders, ropes, or scaffolds . . . [and] should avoid any more than occasional exposure to nonweather related extreme cold or heat and no exposure to protected heights or moving with moving mechanical parts." (R. at 24.) Plaintiff is limited to job that "can be performed while using a hand held assistive device for uneven terrain or prolonged ambulation." (R. at 24.) The ALJ concluded Plaintiff is unable to perform past relevant work but can perform a significant number of jobs in the national economy, including a customer service representative or receptionist. (R. at 28–29.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the

record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps. The burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment in the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the final step to determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.   ANALYSIS**

Plaintiff raises two arguments on review: (1) the ALJ improperly rejected Plaintiff's symptom testimony, and (2) the ALJ improperly rejected the opinions of Plaintiff's treating physician Dr. Dhillon and examining orthopedic specialist Dr. Thongtrangan.

**A. The ALJ erred in rejecting Plaintiff's symptom testimony.**

The ALJ engages in a two-step analysis when evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, she must determine whether the claimant has produced objective medical evidence of an underlying impairment. *Id.* Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is the most demanding standard in Social Security cases. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Here, the ALJ mentioned[1] bulging discs, anxiety, arthritis, scar tissue on Plaintiff's nerve, and high blood pressure, and cited no evidence of malingering. (R. at 24.) Accordingly, she needed to provide specific, clear and convincing reasons to discount Plaintiff's symptom testimony.

In making credibility determinations, an ALJ may consider "the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Here, the ALJ appears to present two bases for discounting Plaintiff's testimony: (1) inconsistency with Plaintiff's daily activities and (2) inconsistency with the medical record.

**1. Plaintiff's Daily Activities**

An ALJ may find that a claimant's testimony regarding his daily activities detracts from the claimant's credibility when the activities are inconsistent with other testimony or are exaggerated, or when the activities indicate capacities that are transferable to a work setting on a sustained basis. *Molina*, 674 F.3d at 1113; *Orn*, 495 F.3d at 639. While a claimant "need not vegetate in a dark room" to be considered disabled under the Act, an ALJ can properly discredit his symptom testimony if participation in daily activities

---

[1] The ALJ did not explicitly state these conditions were the medically determinable impairments for purposes of the two-step analysis of *Burch*, and they do not match the severe impairments listed under step two of the overall five-step framework. It seems the ALJ lifted these impairments from a psychological report from a July 28, 2015 appointment at Sentience Psychological Services. (R. at 506.) Nonetheless, the Court accepts the listed impairments for purposes of evaluating Plaintiff's credibility.

- 4 -

contradicts his claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Here, the ALJ noted Plaintiff participated in "activities of daily living including preparing his own meals, driving himself, shopping for groceries, performing household chores, washing laundry, managing his own finances, visiting family regularly, and traveling to Hawaii." (R. at 26.) She concluded his ability to engage in such activities "diminishes the reliability" of his allegations of functional limitations. (R. at 26.) She also noted Plaintiff cared for his pets and his mother while she was sick, indicating he is not only able to care for himself but also for the needs of others.

However, merely listing the activities Plaintiff by necessity engages in fails to account for the full and accurate picture. Indeed, the ALJ, drawing most of these activities from Plaintiff's function reports, omitted that in those same reports, Plaintiff stated he spends about 80–90% of the day in bed managing his pain. (R. at 258, 294.) The ALJ stated Plaintiff shops for groceries, but left out that he either plans out his grocery excursions to last just 10 minutes if walking; otherwise, he uses a motorized scooter in the store. (R. at 50.) She said Plaintiff cared for his ailing mother but ignored that the care consisted of calling his mother on the phone "to check up on her" and preparing her sandwiches and microwave meals. (R. at 45.) The pet care amounts to taking them out to the bathroom several times a day for two to three minutes each; his mother had to change the pets' water. (R. at 258.) Plaintiff's meal preparation, which accounts for 20–30 minutes in total daily, involves making simple sandwiches, eggs, frozen food, or canned food; he often must lay down throughout or after meal preparation due to the pain. (R. at 259, 295.)

Plaintiff noted on his function reports that dressing himself, bathing himself, and using the toilet is "very difficult." (R. at 259, 295.) While he does some laundry and household chores, he described them as "very hard" to do because of the pain. He puts theses chores off until they need to get done, and only does them a little at a time, not all at once. (R. at 51, 260, 296.) Plaintiff used to attend church and congregation meetings on a weekly basis and used to socialize with friends, but no longer does either because of the

pain. (R. at 261, 298.) Thus, it appears Plaintiff does not—even sporadically—engage in activities he once enjoyed.[2]

In short, the details bely the ALJ's conclusion concerning Plaintiff's daily activities. The record reflects his daily activities are simple, short-lasting, and carried out painstakingly. *See, e.g.*, *Garrison*, 759 F.3d at 1016 ("The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent with the pain that Garrison described in her testimony."); *Reddick*, 157 F.3d 715 at 722 (concluding the ALJ erred in determining the claimant's daily activities demonstrated an ability to work, when the record showed her activities were irregular and punctuated by periods of rest).

The ALJ noted that medical records describe Plaintiff as "well-nourished, well-developed, pleasant, cooperative, alert, oriented, comfortable, calm, [and] relaxed." (R. at 26.) However, she failed to explain how any of these characteristics, many of which are cognitive, are inconsistent with long-term radiating pain in his lower back. Indeed, the same doctors' notes from which the ALJ pulled those adjectives also documented Plaintiff's history of severe back pain stemming, in large part, from multiple car accidents, included a five-car pileup; the limitations the pain causes in his daily life; and the failure of various treatments to alleviate the pain. (R. at 363, 422, 507–508, 811.) The ALJ also said Plaintiff's providers sometimes characterized Plaintiff as being in "no acute distress." (R. at 26.) Plaintiff's chief medical concern is *chronic* lower back pain. The ALJ failed to

---

[2] The Court found just one reference in the record pertaining to Plaintiff's travel to Hawaii. Apparently, Plaintiff flew to Hawaii to attend his mother's memorial service after she passed away. (R. at 929.) The ALJ did not expound on or inquire into the details of the trip, including the activities Plaintiff engaged in or whether Plaintiff was able to alternate positions during the flight. A single interstate trip made under extenuating circumstances does not sufficiently refute Plaintiff's testimony regarding the severity of his pain and the limitations of his functional activities. *See Ong v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00960-PHX-BSB, 2018 WL 3323169, at *9 (D. Ariz. July 6, 2018) (reversing the ALJ's finding of non-credibility based on two vacations the plaintiff took to Jamaica because the ALJ did not discuss any details of the plaintiff's travel or her activities during the trips and did not explain how the trip was inconsistent with the plaintiff's testimony); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

explain why his lack of *acute* distress is relevant or otherwise damages his credibility. *See Ekola v. Colvin*, No. CV-13-1812-PHX-HRH, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014) ("Plaintiff's conditions were chronic, not acute. Thus, the fact that physicians noted that she was not in acute distress is somewhat meaningless.").

### 2. Objective Medical Evidence

The ALJ also discounted Plaintiff's testimony as being "not entirely consistent" with objective medical evidence. (R. at 25.) While an ALJ is permitted to reduce the weight given to a claimant's testimony if it is unsupported by objective medical evidence, this cannot be the sole reason the testimony is rejected. *Burch*, 400 F.3d 676 at 680 ("[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."). Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is also insufficient to reject Plaintiff's testimony. *Id.* at 680.

Even if the Court were to consider this basis, it finds it is not clear and convincing. The ALJ began by summarizing Plaintiff's back surgeries—one in 1993 and one in 2000—and the multiple car accidents in 2014 and 2016 that worsened his back injuries. (R. at 25.) She wrote that although the "evidence demonstrates [Plaintiff's] back surgeries limit his tolerance for physical activity," his "medical records do not demonstrate that these impairments precluded all work." (R. at 25.)

She then described recent radiographs that "showed of L4-L5 stable grade 1 anteriolisthesis with moderate to severe narrowing" and cervical radiographs that "showed of significant degenerative disease." (R. at 25.) She acknowledged Plaintiff would be likely to have "some pain and restriction" but decided the lack of "severe stenosis, nerve root impingement or several foraminal narrowing" precluded the severity of Plaintiff's alleged pain and restrictions. This is *precisely* what the Ninth Circuit has instructed an ALJ not to do: conclude that the severity or extent of Plaintiff's reported symptoms is not supported by the ALJ's reading of the objective medical evidence. *See Garrison*, 759 F.3d at 1014; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) ("The claimant . . . need not

show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.").

Moreover, the logical deduction from the ALJ's statement is that a person must have at least one of the three conditions listed by the ALJ in order to experience back pain severe enough to preclude work. But the ALJ failed provided any basis for or explanation behind her own medical determination that particularized symptoms can be caused only by a set of circumscribed injuries. *See Maydanis v. Colvin*, 119 F. Supp. 3d 969, 976 (D. Ariz. 2015) ("[An ALJ] must not succumb to the temptation to play doctor and make his own independent medical findings."). In any event, medical records did show Plaintiff had advanced spondylosis, advanced facet arthropathy, complete disc height loss, moderate to severe facet degenerative changes, and moderate to severe spinal canal stenosis. (R. at 416, 808, 843.)

### B. The ALJ erred by giving minimal weight to the opinions of Plaintiff's treating physician and examining orthopedic surgeon.

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A treating physician's opinion is given controlling weight "so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record]." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating or examining doctor's opinion is uncontradicted, the ALJ must state clear and convincing reasons supported by substantial evidence for rejecting the opinion. If the treating or examining physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the

opinion without setting forth specific and legitimate reasons supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Even when contradicted, a treating doctor's opinion will often be entitled to significant deference. *Orn*, 495 F.3d at 632–33.

**1. Dr. Dhillon**

On May 17, 2017, Plaintiff's treating physician, primary care provider ("PCP") Dr. Simi Dhillon, filled out a "Capabilities and Limitations Form" provided by Plaintiff's employer, Bank of America. (R. at 333–36.) Dr. Dhillon noted Plaintiff has chronic back pain with lumbar radiculopathy. This "limits his ability to sit or stand for long periods of time" and requires Plaintiff to take frequent breaks. Plaintiff cannot lift more than five pounds or bend at the waist. Dr. Dhillon opined that Plaintiff would miss at least four full days of work per month or one week per month, and would need seven 10-minute breaks in an eight-hour workday. (R. at 336.)

The ALJ gave little weight to Dr. Dhillon's opinion. First, she stated the opinion was "excessively restricted and quite conclusory, providing little explanation of the evidence relied on in forming the opinion." (R. at 27.)  When evaluating how much weight to afford a medical opinion, the ALJ should consider, among other factors, how well-supported the opinion is. 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). However, that an opinion itself is unaccompanied by a narrative explanation is not fatal; what matters is whether it was based on treating experiences and treatment records. *Burrell*, 775 F.3d at 1140 (reversing the ALJ's rejection of the check-box medical opinion because it was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion," when the claimant's testimony and the medical records supported the opinion); *see also Garrison*, 759 F.3d at 1014 n.17.

Here, Dr. Dhillon had seen Plaintiff five times in the months prior to filling out the form. The records for those visits reflect Dr. Dhillon's assessments of Plaintiff's severe chronic back pain, antalgic gait and ambulation with a cane, vomiting in response to pain

medication, depression, and anxiety. (R. at 904–74.) Her opinion was not provided in a vacuum—it was supported by medical records from Dr. Dhillon and other treating providers[3], Plaintiff's testimony, and Dr. Thongtrangan's medical opinion, which the Court discusses more fully below. The ALJ's statement that it was "quite conclusory" is thus not supported by substantial evidence.[4]

The ALJ also rejected Dr. Dhillon's opinion on the grounds that it "may have relied too heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported." (R. at 27.) An ALJ may reject a treating physician's opinion "if it is based to a large extent on

---

[3] For example, a cervical spine X-ray from November 2014 showed advanced decrease of disc space height at C4-5, a previous fusion at C5-6, and advanced spondylosis and likely bony stenosis at C4-5. (R. at 416.) In November 2014, PCPs at First Medical Plus noted "severe pain" in the lumbar spine region, headaches, insomnia, extreme anxiety, and body aches, and prescribed a muscle relaxant, an anti-inflammatory, an anti-depressant, and a pain reliever. (R. at 471.) Treatment notes from December 2014 to August 2015 are similar, with lumbar spine pain with radiculopathy frequently noted. In January 2015, a CT scan showed degenerative spondylolisthesis with advanced facet arthropathy and diffuse annular bulging at L4-L5, a "diffusely bulging degenerative disc" at L2-3, and a "moderately stenotic" central spinal canal. (R. at 454–55.)

From December 2015 to July 2016, PCPs at First Medical Plus conducted physical exams of Plaintiff, consistently revealing tenderness to palpation of the lumbar paraspinous muscles, positive straight leg raising, limited flexion and extension at the waist, back muscle spasms, and decreased paralumbar range of motion. (R. at 856, 860, 863, 867, 871, 881, 885, 888, 892, 895.) They documented Plaintiff's thoracic and lumbar pain, and prescribed him various medications, administered Toradol injections, and diagnosed him with post-laminectomy syndrome. (*See id.*) Plaintiff was referred to, and saw, chiropractors, pain management specialists, an orthopedic spine specialist, and physical therapists.

A March 2016 lumbar spine X-ray showed disc bulges at L2-3 and L3-4; L4-5 moderate to severe facet degenerative change, anterolisthesis, disc bulge, and moderate to severe spinal canal stenosis; and L5-S1 facet degenerative changes and bone spurring. (R. at 843–44.) Lumbar CT scans from March and May 2016 showed disc bulging and L4-5 moderate to severe facet degenerative changes, moderate to severe spinal canal stenosis, anterolisthesis, and moderate to marked facet joint arthropathy. (R. at 803–06.) A July 2017 lumbar spine X-ray showed advanced spondylosis of the low spine, complete disc loss at L5-S1, and severe L4-5 facet arthropathy. (R. at 808.)

The Court could continue to exhaustively list Plaintiff's medical records demonstrating documented back problems and limitations, but declines to do so. The point is that Dr. Dhillon's assessment was not merely a check-box opinion, but was amply supported by the record.

[4] The ALJ similarly discounted Dr. Dhillon's opinion because Plaintiff had only been seeing her since February 2017. (R. at 27.) Though nothing more was stated, the implication is that Dr. Dhillon was not equipped to opine on Plaintiff's limitations. In this context, this reasoning is essentially an iteration of the check-box opinion rationale, and therefore fails for the same reasons.

a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. However, as discussed above, the ALJ failed to give specific, clear, and convincing reasons for discrediting Plaintiff's testimony. "Because the ALJ did not *properly* discount [Plaintiff's] testimony, this reason fails." *Burrell*, 775 F.3d at 1141 (emphasis in original); *see also Davis v. Colvin*, No. CV-13-00679-TUC-CRP, 2015 WL 5730581, at *5 (D. Ariz. Sept. 30, 2015) (criticizing the same language of the ALJ and noting the ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits").

Next, the ALJ discounted Dr. Dhillon's opinion because Dr. Dhillon was Plaintiff's PCP, rather a specialist. The regulations state the Commissioner generally gives "more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." *See* 20 C.F.R. § 404.1527. This logically applies when a specialist and a generalist give potentially conflicting opinions—in that situation, an ALJ may properly give more weight to the specialist's opinion. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). It does not, however, mean that a PCP is unqualified to render a medical opinion by virtue of her generalist practice. Defendant did not supply any support for the ALJ's reading of this particular regulation, and the Court found none. In any event, the only opinion in the record that came from a specialist, orthopedic surgeon Dr. Thongtrangan, contained even greater restrictions than Dr. Dhillon's opinion.

Finally, citing a singular note from an appointment in August 2017, the ALJ stated the limitations opined by Dr. Dhillon "are at odds with the [August 2017] examination results showing no tenderness of neurological deficits or distress." (R. at 27, citing R. at 973.) Again, the ALJ offers no explanation why a lack of tenderness or neurological deficits undermines Dr. Dillon's opinion, which focused on limitations caused by radicular pain in the lower back.

For the above reasons, the Court concludes the ALJ's reasons for rejecting Dr. Dhillon's opinion are not supported by substantial evidence in the record.

### 2. Dr. Thongtrangan

The ALJ gave little weight to an unnamed "treating provider,"[5] which the record reveals was orthopedic surgeon Dr. Issada Thongtrangan. Dr. Thongtrangan saw Plaintiff on April 17, 2015. (R. at 421.) The extensive notes from that appointment began with Plaintiff's medical history and symptoms. Plaintiff was experiencing radiating lower back pain, described as "shooting and numbness and tingling that is sharp, constant and throbbing." This worsened after an October 2014 car accident. He had also developed similar symptoms along his anterior left thigh. During the physical exam, Plaintiff was unable to do heel-to-toe, stand on his toes, or stand on his heels. The musculoskeletal exam revealed, among other things, flexion with pain, extension with pain, right and left lateral bend with pain, right and left rotation with pain, positive facet loading tests, and positive straight leg rising on both sides. (R. at 422.) Dr. Thongtrangan reviewed Plaintiff's recent X-rays and CT scans. He noted Plaintiff's limping, difficulty walking, and use of a cane.

Dr. Thongtrangan opined that "prolonged sitting, standing, walking, and physical activity aggravate [Plaintiff's] symptoms" and that "lying down seems to alleviate his symptoms." (R. at 422.) He noted Plaintiff is unable to work due to his ongoing symptoms.

The ALJ gave little weight to Dr. Thongtrangan's opinion "because it is unclear whether these doctors[6] are familiar with the definition of disability contained" in the Act. (R. at 27.) Specifically, the ALJ stated "it is possible that these doctors were referring solely to an inability to perform [Plaintiff's] past work." (R. at 27.) This is not a specific or legitimate reason for rejecting Dr. Thongtrangan's opinion. First, that it was "possible" Dr. Thongtrangan was referring only to past work demonstrates mere speculation on the part of the ALJ, which is neither specific nor legitimate. Second, Dr. Thongtrangan opined that sitting, standing, and walking aggravate Plaintiff's condition and lying down alleviates it.

---

[5] Although the ALJ herself refers to Dr. Thongtrangan as a treating provider, Plaintiff states he was an examining physician. (Pl. Brief at 1.)

[6] The Court presumes "these doctors" refers to both Dr. Thongtrangan and Plaintiff's PCPs at First Medical Plus, who filled out work excuse forms in February 2015 and April 2015, stating Plaintiff had been in their continual care since the October 2014 accident and that a continuous leave of absence was necessary at those times. (R. at 571–72.) The ALJ cites this record, but does not expand on her analysis of it.

- 12 -

This type of limitation would interfere with nearly all forms of work, past or present. Accordingly, this was not a legitimate basis for rejecting his opinion.

The ALJ noted "statements that a claimant is disabled, unable to work, or can or cannot perform a past job" are not medical opinions and are reserved for the Commissioner. (R. at 27.) This is an accurate statement of the law. However, it is not a sufficient basis, alone, for rejecting Dr. Thongtrangan's opinion. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (finding the ALJ erred in failing to consider the claimant's physician's opinion that the claimant's "combination of mental and medical problems makes the likelihood of sustained full time competitive employment unlikely"). Dr. Thongtrangan's opinion is supported by thorough notes and examination findings detailing Plaintiff's physical limitations and history of back pain. The ALJ and this Court could omit Dr. Thongtrangan's conclusion that Plaintiff is unable to work and would still be left with the information underlying the opinion, *i.e.*, that prolonged sitting, standing, and walking aggravates Plaintiff's severe back pain, and that Plaintiff must lie down to obtain relief.

Accordingly, the ALJ erred by failing to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Thongtrangan's opinion.

**C. The Credit-As-True Rule Applies.**

The credit-as-true standard, if applied here, would result in a remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if three elements are present. First, the record must be fully developed such that further administrative proceedings would not be useful. *Id.* Second, the ALJ must have failed to provide legally sufficient reasons for rejecting evidence. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

The credit-as-true rule applies in this case. The record in this case was fully and extensively developed, such that further proceedings would be unproductive. As detailed in this Order, the ALJ failed to properly weigh Plaintiff's symptom testimony and failed to provide legally sufficient reasons for rejecting the medical opinions of Dr. Dhillon and Dr. Thongtrangan. Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled. The vocational expert testified that Plaintiff could not sustain work if he would be off task for 15% of every eight-hour day "due to significant pain and effects from his medication." (R. at 58–59.) These limitations are consistent with Plaintiff's testimony and the opinion of Dr. Dhillon, who opined that Plaintiff would require at least seven 10-minute breaks per workday.

There is no serious doubt that Plaintiff is disabled. It is therefore unnecessary to remand this case for further administrative proceedings, and the Court remands for a calculation and entry of benefits.

**IT IS THEREFORE ORDERED** reversing the March 29, 2018 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for a calculation of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 28th day of July, 2020.

Honorable John J. Tuchi
United States District Judge